Lewis **RUFF, Sr., Willie Bailey, George Andrews, Tommy Farley, Sr., Thomas L. Daniel and Robert Clemons, Individually and on behalf of all those similarly situated, Plaintiffs,**

v.

James P. **MARSHALL, Individually and in his official capacity as Mayor of the City of Eatonton, Billy Wooten, Individually and in his official capacity of Chief of Police for the City of Eatonton, Defendants.**

Civ. A. No. 77–61–MAC.

United States District Court,
M. D. Georgia,
Macon Division.

Oct. 5, 1977.

304

Laughlin McDonald, Atlanta, Ga., Edward E. Augustine, Athens, Ga., for plaintiffs.

D. D. Veal, Eatonton, Ga., for defendants.

OWENS, District Judge:

This case requires this court to decide the constitutional validity of two ordinances of the City of Eatonton. Ordinance Number 375, Code of the City of Eatonton § 19–9, 10, empowers the Mayor to proclaim an 8:00 P.M. to 6:00 A.M. curfew proscribing individual or group congregation, loitering or mere presence upon private property without the express consent of the owner or upon public property " . . . unless engaged in lawful business, emergency activities or activity of necessity." Proclamations necessary to bring Ordinance Number 375 into effect have been issued from time to time, for example, by proclamation of December 31, 1974, the curfew was imposed between the hours of 11:00 P.M. and 6:00 A.M. The second ordinance, that of July 5th, 1966 (hereinafter, the loitering ordinance), prohibits parking, driving, loitering or congregating, upon the property of any public business after close of business unless the individual is the owner, agent or employee of the business. Plaintiffs, black residents of the City of Eatonton, attack the constitutionality of these ordinances both on their faces and as applied. Since both ordinances are facially unconstitutional, the court finds it unnecessary to consider the constitutionality of their application.

*Ordinance Number 375*

■ The curfew ordinance excepts those " . . . engaged in lawful business, emergency activities or activity of necessity." While the bounds of "activities of necessity" are obviously so unclear as to support a finding that the ordinance's application is unconstitutionally vague, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974), the ordinance suffers from a more apparent and greater constitutional malady, overbreadth.

At least as early as 1940, in response to the favored status of rights to expression and association in our constitutional scheme, the Supreme Court developed what has become known as the overbreadth doctrine. This method of adjudication, wherein the courts review a particular law on its face without regard to the constitutional status of a particular claimant's conduct, is based on the principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Facial overbreadth scrutiny emphasizes the need to eliminate an overbroad law's deterrent impact on constitutionally protected expressive activity. "Chilling effect" is a short-hand way of describing this vice of an overbroad law. Since by definition an overbroad statute covers some privileged as well as non-privileged activity, the statutory burden operates as a disincentive to action and creates an *in terrorem* effect on conduct within the protection of the First Amendment. In the area of speech, the vagueness doctrine, based upon the principle that a statute must not forbid or require "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application,"

.  .  . .

Lack of fair warning to actors or lack of adequate standards to guide enforcers also may lead to a "chill" on privileged activity. A person contemplating action who might be covered by a vague statute is left in doubt as to whether he is covered by the statute and, if so, whether his claim of privilege will be upheld.

Rather than await case-by-case excision of a statute's overbreadth or vagueness through review of its application to particular conduct, which would be needlessly time-consuming and ineffective, courts under the rubric of the overbreadth doctrine, invalidate the statute facially so as to end its deterrence of constitutionality protected activity. Simply to review a statute as applied to the conduct of a particular claimant, while it might permit that individual to escape the statutory burden, would permit the overbroad law to remain as a deterrent to others who, because of fear of statutory reprisals, might forego protected activity rather than test their privilege administratively or judicially.

The overbreadth doctrine, therefore, focuses directly on the need for precision in legislative draftmanship to avoid conflict with First Amendment rights. Even though the interests a statute promotes may justify some infringement upon First Amendment rights, the overbreadth doctrine condemns those means to that legitimate end which comprehend too broad an incursion upon the realm of First Amendment activity. Where a law is substantially overbroad, in that it sweeps within its scope a wide range of both protected and nonprotected expressive activity, and where no "readily apparent construction suggests itself as a vehicle for rehabilitating the statute in a single [proceeding]," courts have rejected simple interest balancing and have required the legislature to achieve its end by "less drastic means."
*Hobbs v. Thompson*, 448 F.2d 456, 459–60 (5th Cir. 1971) (citations and footnotes omitted)

■ As Ordinance Number 375 is now written, proclamation of a curfew quite

clearly burdens individual rights to speech, association, practice of religion, interstate transportation, privacy, etc. In this society which has great respect for individual freedoms, it is a fundamental principle that where government wishes to adopt regulations that may burden or infringe individual rights and freedoms, the government must not only have some significant reasons for adopting the regulations, but must also tailor the regulations so that they meet the specific need without unnecessarily infringing individual freedoms.

■ Eatonton's Ordinance Number 375 states that its enactment is prompted by " . . . reports of juvenile delinquency and disorders in the City of Eatonton." The court suspects that absent some immediate and significant threat such as pervasive rioting or looting, Eatonton does not have sufficient interest to impose any curfew. Surely, mere reports of juvenile delinquency and civil disorders are insufficient to justify an ongoing blanket curfew such as that presently at issue. In addition, Ordinance Number 375 places no limit upon the Mayor's power to proclaim a curfew. Consequently, under this ordinance, the Mayor could impose a curfew where there was *no* state interest in the imposition, let alone an interest sufficient to make imposition constitutionally permissible. In short, curfews are constitutionally permissible only where there is some real and immediate threat to the public safety which cannot be adequately met through less drastic alternatives and where the curfew itself is tailored in duration and application so as to meet the specific crisis without unnecessary infringement of individual liberties. Ordinance Number 375 does not even come close to meeting this standard and is therefore found unconstitutional on its face.

### The Loitering Ordinance

■ The loitering ordinance prohibits parking, driving, loitering or congregating upon " . . . any public place of business, service station, store, warehouse, bus depot, railway station, or other premises of another, after the close of business." In context, the term "other premises of another" is unconstitutionally vague as it is unclear whether all private property of another is included or whether only that private property of another is included which has a public business operated upon it.

■ As hereinbefore stated, when state statutes or ordinances tend to burden or infringe fundamental individual rights, the state must tailor its statute so as to accomplish its goals with a minimal interference with individual liberties. The Eatonton loitering ordinance makes it a crime to loiter, park, congregate, drive, etc. upon certain privately owned property unless the individual is the owner, agent or employee of the business located upon that property. The ordinance does not except those present upon the property by invitation of the owner of the property. Clearly, Eatonton has no interest in including invitees within the ordinance's proscriptions. Therefore, the ordinance is overbroad.

■ Moreover, where loitering, parking, driving and congregating are occasioned, not by express invitation, but by long standing custom and habit of which the owner is aware and to which the owner has not objected, the individuals involved in these activities have a right to continue without unnecessary interference by the City of Eatonton, acting on its own without request from or consent of the owner. The individuals involved have rights which, though they may not rise to constitutional or fundamental stature, are sufficiently well established and accepted by our free society so as to require that the hereinbefore stated principles of the overbreadth doctrine be applied. The City's desire to nip crime in the bud may be accomplished by less drastic alternatives which do not sweep so broadly into rights enjoyed by its citizens. For all these reasons, the ordinance is overbroad and unconstitutional on its face.

For the reasons hereinbefore stated, the City of Eatonton, as well as the individual defendants, are hereby permanently enjoined from directly or indirectly enforcing

either Ordinance Number 375 or the loitering ordinance.

SO ORDERED, this 5th day of October, 1977.