**G.J. ELDRIDGE et al., Plaintiffs,**

v.

**Ronald A. BOUCHARD et al.,
Defendants.**

**Civ. A. No. 85–0042–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Oct. 9, 1986.

Robert M. Galumbeck, James R. Henderson, Tazewell, Va., for plaintiffs.

Guy W. Horsley, Jr., Walter A. McFarlane, Malcolm R. West, Asst. Attys. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiffs, Division Four employees of the Virginia Department of State Police, challenge the Department's practice of paying Division Seven employees a salary differential. Plaintiffs contend that the defendants' actions violate the Fourteenth Amendment to the United States Constitution and that a cause of action exists under Sections 1983, 1985 and 1988 of Title 42 of the United States Code. 28 U.S.C. §§ 1343 and 1331 give this court original jurisdiction.

## I.

### BACKGROUND

The Virginia Department of State Police (VDSP or Department) is currently divided into seven (7) geographic regions called divisions. Plaintiffs, 139 employees of the VDSP, are all members of the Fourth Division which includes many counties and cities in Southwestern Virginia.[1] The department compensates employees of Division One-Six according to a uniform compensation schedule. Division Seven[2] employees, however, receive a salary differential which at the present time is 20% greater than the salary paid to Division One-Six employees.

VDSP began paying the differential in 1974 following a 1973 consultant's study of the competitiveness of all rates paid in the State Compensation Plan. The study measured competitive rates by area or region of the state and recommended where the state should pay differentials. The results of the 1973 study suggested that the VDSP should pay a salary differential to employees in the Northern Virginia area. Based upon the study's findings and recommendations, the VDSP proposed a plan to pay a salary differential to its employees in Northern Virginia. The governor approved the salary differential and the General Assembly appropriated money for the differentials. The pay differentials have continued since 1974 ranging from 12% to 22%. Periodic surveys verified the continuing need for the Northern Virginia differential. The VDSP's purpose in paying the differential is to remain competitive with private and other public employers in the Northern

---

1. Division Four includes the following cities: Bristol, Galax, Norton, Pulaski, Vansant, Wytheville; and the counties of Bland, Buchanan, Carroll, Dickenson, Giles, Grayson, Lee, Pulaski, Russell, Scott, Smyth, Tazewell, Washington, Wise and Wythe.

2. Division Seven includes the cities of Alexandria and Falls Church, and the counties of Arlington, Fairfax, Loudon and Prince William.

Virginia area and to retain well qualified personnel in the Seventh Division. Past surveys show that the Seventh Division has had the highest attrition rate of any of the divisions; losing a number of qualified personnel to local city and county law enforcement offices. The differential does not serve as a cost-of-living adjustment but rather as an incentive to retain well qualified individuals in the VDSP.[3]

## II.

## HISTORY OF CASE

The plaintiffs commenced this action on February 1, 1985 by filing their complaint with the Clerk of the United States District Court for the Western District of Virginia. In their complaint, plaintiffs alleged a cause of action under 42 U.S.C. §§ 1983, 1985 and 1988 and a violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. Defendants promptly filed a motion to dismiss and/or a motion for summary judgment and a motion to abstain. After accepting briefs and hearing oral arguments, this court overruled defendants' motion to abstain, overruled defendants' motion for summary judgment with respect to the claim under 42 U.S.C. § 1983 and the Fourteenth Amendment, but granted defendants' motion for summa-

ry judgment as to plaintiffs' claim under 42 U.S.C. § 1985(3).

The plaintiffs subsequently made two (2) motions to file an amended and supplemental complaint. The court granted the second motion on March 20, 1986 wherein the plaintiffs amended their complaint to add seven (7) additional plaintiffs and to add Gerald Baliles as a defendant. Prior to trial, the court granted plaintiffs' motion to sever the issue of actual damages from the remaining liability issues. The court heard testimony at the trial on April 7–9, 1986, but took the case under advisement following the conclusion of all evidence. Both plaintiffs and defendants submitted post-trial briefs containing proposed findings of fact and conclusions of law.

## OPINION

The plaintiffs assert that 42 U.S.C. § 1983 provides a cause of action by which they may challenge the defendants' actions. Section 1983, however, provides only the cause of action, but does not delineate the substance of the violation. To succeed in a § 1983 action, a plaintiff must establish a deprivation of a right secured by the Constitution or the federal law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981).[4] Accordingly, the plaintiffs base their right to recover damages under 42 U.S.C. § 1983 upon the fact that the defendants' actions

3. At an early stage of this proceeding, the court received conflicting affidavits from respected members of the General Assembly. One affiant stated that cost of living was the basis for the differential while another said that competition from private and public employers was the basis. The testimony on cost of living is highly conflicting. One obvious reason for this conflict is the economic discrepancy within the divisions. For example, Loudon County in Division Seven does not have a cost of living as high as Fairfax and Arlington, nor is it as high as the coal counties in Division Four. On the other hand the cost of living in Washington and Wythe Counties is not as high as the cost of living in Wise, Dickenson and Buchanan Counties, counties which are in the same division, nor as high as the cost of living in Fairfax and Arlington. Also, the evidence is undisputed that the VDSP has had great difficulty in keeping state policemen in Northern Virginia. Many

troopers, now located in Division Four, requested transfer from Division Seven after fulfilling of the minimum mandatory service. Also, many troopers in Northern Virginia had left the VDSP for private and other public employment. One example of this occurred in Prince William County where all its employees in law enforcement are former state troopers who now receive higher pay. Thus, the evidence clearly supports the need for the differential in Division Seven so that VDSP can remain competitive. The weight of the evidence as to the need of the differential in order to remain competitive in District Four is to the contrary.

4. To succeed in a § 1983 action, the conduct complained of must be committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. at 535, 101 S.Ct. at 1912–13. The court, however, need not address this essential element.

violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment. They also contend that the differentials violate the Virginia Constitution.

## III.

### EQUAL PROTECTION

■■■ The plaintiffs allege that the VDSP's practice of paying a salary differential violates the Equal Protection Clause of the Fourteenth Amendment. The first step in any equal protection analysis is to determine the appropriate level of scrutiny. The government must show a compelling justification necessary to promote an important interest if the law or action impinges a fundamental right or discriminates against a suspect classification. (strict scrutiny). *Dunn v. Blumstein,* 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969); *Harper v. Virginia State Board of Education,* 383 U.S. 663, 670, 86 S.Ct. 1079, 1083, 16 L.Ed.2d 169 (1966); *Loving v. Virginia,* 388 U.S. 1, 9, 87 S.Ct. 1817, 1822, 18 L.Ed.2d 1010 (1967); *Attorney General of New York v. Soto-Lopez,* — U.S. ——, 106 S.Ct. 2317, 2321, 90 L.Ed.2d 899 (1986). However, if the action or law is a mere economic regulation, that neither discriminates against a suspect classification nor impinges a fundamental right, then the government need only show a rational basis for its action. (minimal scrutiny). *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 813, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976); *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979). Therefore, this court must first determine if plaintiffs are a suspect class or if defendants' actions impinge a fundamental right.

■■■ The plaintiffs are Division Four employees of the VDSP. A suspect class, as defined by numerous court opinions, is a discrete and insular minority that is unable to shake or rise above the bonds and stigma of its minority status. Courts have been unwilling to extend suspect class status to any classification other than race, alienage and national origin. However, in certain instances, where the classification is based on sex or legitimacy, courts have applied a heightened scrutiny bordering between strict scrutiny and minimal scrutiny. (intermediate scrutiny). *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *reh. den.,* 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). But mere economic status does not lend itself to a suspect classification. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 18, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 *reh. den.,* 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973). Plaintiffs, therefore, are not a suspect class and this court will not apply strict scrutiny unless the defendants' actions impinge a fundamental right.

■■■ Plaintiffs contend that the pay differential impinges their fundamental right of travel. The Supreme Court's recent opinion in *Attorney General of New York v. Soto-Lopez* provides guidelines to determine when a state law or action impinges the right to travel. "A state law implicates the right to travel when it actually deters such travel, ... when impeding travel is its primary objective, ... or when it uses 'any classification which serves to penalize the exercise of that right.' ..." *Soto-Lopez,* — U.S. at ——, 106 S.Ct. at 2321.

The pay differential does not actually and/or explicitly deter travel. The statute at issue in *Edwards v. California, infra,* is an example of a statute which actually deterred travel. The California statute, challenged in *Edwards,* declared it a misdemeanor for any person to bring or assist in bringing, into the state, any nonresident of the state, knowing him to be an indigent person. *Edwards v. California,* 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941). This type of explicit restriction on travel is the type of situation to which the language in *Soto-Lopez* refers when it states that "[a]

state law implicates the right to travel when it actually deters such right...." *Soto-Lopez*, 106 S.Ct. at 2321. Because the pay differential does not explicitly limit or restrict travel, it does not "actually deter travel."

The other two considerations, whether the challenged action has as its primary objective to impede travel and whether the challenged action uses a classification which penalizes the exercise of the right to travel, require looking to the purpose and effect of the action rather than looking only at the statute itself. Therefore, the court will address the remaining consideration with the same analysis.

■■■ The Supreme Court has consistently recognized a fundamental right to interstate travel. While this fundamental right developed primarily from Equal Protection analysis, the right of interstate travel also has traces of Privileges and Immunities clause analysis. The Supreme Court recognized this fundamental right in order to prevent a state from discouraging or penalizing migration into its borders. The fundamental right to travel, however, is not necessarily movement, but the ability and opportunity to migrate, resettle, find a new job and start a new life. *Wardwell v. Board of Education of City School District of Cincinnati*, 529 F.2d 625, 627 (6th Cir.1976). By recognizing a fundamental right to interstate travel, the Equal Protection clause prevents states from discouraging or penalizing "travel" by extending fewer rights and/or privileges to new residents than the state extends to established residents. By preventing discrimination of residents based upon length of residency, the Equal Protection clause operates to protect new residents the same way that the Privileges and Immunities clause operates to prevent a state from discriminating against citizens of another state. The right to travel operates to protect citizens from durational residency requirement but not from the situation presented by the instant case because the salary differential does not impinge the right to travel.

Supreme Court decisions finding a violation of the fundamental right to interstate travel support this conclusion. In each case, the action involved a provision requiring that the citizen be a resident for a certain length of time or at a certain time before the individual could receive a privilege or exercise a right. The cases that have recognized a fundamental right of interstate travel have done so vis-a-vis durational residency requirements. *See Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (one-year residency requirement to vote) (impinged upon both fundamental right to vote and to interstate travel). *Id.* at 335, 92 S.Ct. at 999; *Memorial Hospital v. Maricopa*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (one-year residency requirement to receive non-emergency hospitalization or medical care at the county's expense); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (required an individual to reside within the state for one year before he/she could file an application for AFDC); *Attorney General of New York v. Soto-Lopez*, —— U.S. ——, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (giving a preference in civil service employment opportunities to resident veterans who lived in New York at the time they entered military service). The instant case does not involve a residency requirement similar to the requirements in the preceding cases. Therefore, the challenged action does not impinge the fundamental right to interstate travel because the differential's primary objective is to attract and retain well-qualified personnel, not to impede travel, and the differential does not penalize the exercise of the right to travel.

■■■ Plaintiffs also assert that the salary differential impinges their fundamental right of intrastate travel. After a careful review of the record, this court is unable to conceive how the differential impinges intrastate travel. It appears that the same facts that failed to support a finding of a violation of the right to interstate travel also fail to support a finding of a violation of the right of intrastate travel. The court, however, need not reach this issue because

the plaintiffs do not have a federally recognized fundamental right to intrastate travel. Having a fundamental right of interstate travel does not necessitate recognizing a fundamental right of intrastate travel. In fact, it is entirely consistent to recognize the right of interstate travel without recognizing the right of intrastate travel. (*See* the previous discussion of the interrelatedness of Privileges and Immunities and Equal Protection's recognition of the right to interstate travel.) The protection afforded by the Privileges and Immunities Clause extends only to the state's actions toward citizens of another state in the same way that the right of interstate travel prevents one state from discouraging or penalizing citizens who relocate within the state. Because the Privileges and Immunities Clause protections do not extend to a state's own citizens, then there is no parallel requirement that a court recognize a new fundamental right of intrastate travel. Numerous Supreme Court and court of appeals decisions support this conclusion.

In *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court did not recognize a right of intrastate travel.[5] *Dandridge,* which involved Maryland's procedure for distributing AFDC payments, is factually very similar to the case at hand. Maryland gave AFDC recipients in Baltimore and certain other counties a larger payment than it gave recipients in the other part of the state, however, the Supreme Court found no Equal Protection violations. Likewise, the Supreme Court has been unwilling to use intrastate travel to strike down municipal regulations that require city employees to be residents of the city. *See McCarthy v. Philadelphia Civil Service Comm.,* 424

U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976); *Detroit Police Officers Ass'n v. Detroit,* 385 Mich. 519, 190 N.W.2d 97 (1971), appeal dismissed for lack of substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972). Additionally, several circuits have refused to recognize the right of intrastate travel. Most notable is the Fifth Circuit's decision in *Wright v. Jackson, Mississippi,*[6] 506 F.2d 900 (5th Cir.1975) which held explicitly that no fundamental constitutional right of intrastate travel exists. *Id.* at 901–903. The Sixth Circuit in *Wardwell v. Board of Education of City School District of Cincinnati,* 529 F.2d 625 (6th Cir.1976) and the Seventh Circuit in *Andre v. Board of Trustees of Village of Maywood,* 561 F.2d 48 (7th Cir.1977) adopted *Wright* 's rationale and reasoning and refused to recognize a fundamental right of intrastate travel.

Some cases, however, support the proposition that a fundamental right to intrastate travel exists. *See Wellford v. Battaglia,* 343 F.Supp. 143 (D.Del.1972), *aff'd* 485 F.2d 1151 (3d Cir.1975); *King v. New Rochelle Municipal Housing Authority,* 442 F.2d 646 (2d Cir.), *cert. denied,* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971). The limited cases that recognized a fundamental right of intrastate travel, however, have only found that right impinged by the states' use of durational residency requirements.[7] The instant case involves no durational residency requirements. Therefore, even if the plaintiffs had a fundamental right of intrastate travel, the present salary differential would not impinge that right because the differential has none of the attributes of a durational residency requirement.

---

5. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) was challenged on other Equal Protection grounds.

6. *Wright* involved an ordinance that required all municipal employees to maintain their domicile and principal place of residence within the corporate limits of the city during the period of employment. Plaintiffs challenged the ordinance as violative of intrastate travel.

7. In *Wellford v. Battaglia, supra,* the city charter required that the mayor "shall have been a resident of the city for at least five (5) years preceding his election...." *Id.* at 144.

   In *King, supra,* the New Rochelle Municipal Housing Authority imposed a five (5) year durational residency requirement for admission to public housing.

The United States Supreme Court and several circuit courts have explicitly declined to recognize a fundamental right of intrastate travel. Relying upon those decisions, this court follows their lead and declines to recognize such a right. After careful review of those cases recognizing such a right, this court concludes that those courts would not find that right impinged in the instant case even if this court were to recognize such a right. Therefore, the salary differential does not impinge a fundamental right and this court will apply the "rational basis" test to determine the constitutionality of the defendants' action in paying the differential.

■ The pay differential does not violate the Fourteenth Amendment's Equal Protection clause and is, therefore, permissible if it is "rationally related to furthering a legitimate state interest." *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). The department's actions are tested under minimal scrutiny since the plaintiffs are not a suspect class and since the differential did not impinge a fundamental right. "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979). Thus, this court will overturn the pay differential only if the "varying treatment of different groups is so unrelated to the achievement of any combination of legitimate purposes" that this court can only conclude that the legislature's actions were irrational. *Id.*

■ The evidence supports the defendants' claim that the purpose of the salary differential is to attract and retain well-qualified individuals by insuring that the VDSP remain competitive with private and other public employers in the Northern Virginia area. This is unquestionably a legitimate state interest for it is important that the VDSP employ and retain well-qualified personnel. Therefore, if the means used to achieve this legitimate goal are rational, the differential passes constitutional muster. There is a presumption that the means employed are rational, therefore, the plaintiffs have the burden of showing that the means are clearly irrational. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. at 314, 96 S.Ct. at 2567. However, simply because the VDSP might have furthered its underlying purpose more artfully, more directly or more completely, does not warrant a conclusion that the method it chose is unconstitutional. *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 813, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976); *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966); *Williamson v. Lee Optical*, 348 U.S. 483, 488–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955). This court must uphold the challenged activity if there are any facts that reasonably constitute the distinction. The court finds that such facts exist in the instant case. For example, the 1973 survey and all subsequent surveys suggest that competitor employees' pay scales in Northern Virginia were substantially higher than the VDSP's pay scale and that this led to a loss of trained employees from the VDSP to private employers and local public employers. Because the court's finding constitutes a reasonable basis for the distinction, the pay differential is rationally related to a legitimate governmental interest and does not violate the Equal Protection clause of the Fourteenth Amendment.

This conclusion does not necessarily end the court's equal protection analysis. The plaintiffs contend that, notwithstanding the court's conclusion that *a* differential is a rational means of achieving a legitimate governmental purpose, the challenged activity is irrational because the VDSP only took surveys in the Northern Virginia area to determine if the salaries of Northern Virginia employees were competitive with other employers. The VDSP did not take local surveys in any division other than the Seventh Division. Plaintiffs contend that this selectivity invalidates the otherwise ra-

tional means. Certainly, the VDSP could have acted more completely by surveying in each division, but minimal scrutiny does not require exactitude and precision. "Even if the classification involved here is to some extent both *underinclusive and overinclusive* and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required'." *Vance v. Bradley*, 440 U.S. 93, 108, 99 S.Ct. 939, 948, 59 L.Ed.2d 171 (1979), (emphasis added) (*quoting Phillips Chemical Co. v. Dumas Independent School District*, 361 U.S. 376, 385, 80 S.Ct. 474, 480, 4 L.Ed.2d 384 (1960)); *accord San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 51, 93 S.Ct. 1278, 1306, 36 L.Ed.2d 16 (1973).

*New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) outlines the criteria by which this court examines the challenged action:

> States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step. *Katzenbach v. Morgan*, 384 U.S. 641 [86 S.Ct. 1717, 16 L.Ed.2d 828] (1966), in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. *See, e.g., Williamson v. Lee Optical Co.*, 348 U.S. 483, 488–489 [75 S.Ct. 461, 464–65, 99 L.Ed. 563] (1955). In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines....

*Id.* at 303, 96 S.Ct. at 2517. Relying upon the Supreme Court's directives, this court is hesitant to declare the actions in violation of Equal Protection. As *Dukes* states, legislatures may implement their program step by step, and as applied to the instant case, the VDSP may implement its pay differential division by division. A partial

amelioration does not invalidate the activity even assuming a differential is needed within the other divisions. This court will not invalidate the state's salary differential just because it disagrees with it. The plaintiffs should seek the proper remedy by resorting to influence legislation and legislators. This court is not allowed to act as a superlegislator. *Dukes* at 303, 96 S.Ct. at 2516–17. Accordingly, this court finds that the salary differential does not violate the Equal Protection clause of the Fourteenth Amendment.

## IV.

### DUE PROCESS

■ Plaintiffs also contend that the salary differential violates their constitutional right of due process. In essence, plaintiffs argue that the VDSP denied them an increase in salary without first having a determination as to whether they qualified for such a differential. This conclusion tends to overlook the threshold requirement necessary for every due process violation—the termination or revocation of an *existing entitlement.* To determine if due process requirements apply in the first place, this court must look to the nature of the interest at stake to see if the interest is within the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Due process concerns become important only after an individual has an entitlement to the property or liberty.

> Certain attributes of property interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it.

*Roth* at 577, 92 S.Ct. at 2709.

■ In the instant case, the defendants did not terminate nor revoke a privilege or benefit that the plaintiffs were already re-

ceiving. In fact, plaintiffs had no entitlement in a salary differential but only a desire to receive it. Due process cases involve a termination of a right or privilege presently being received or enjoyed. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (involved the termination of public assistance payments without any pretermination hearing); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (involving a non-probationary federal civil service employee who was removed from his position) [8].

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already acquired* in specific benefits." *Roth,* 408 U.S. at 576, 92 S.Ct. at 2708 (emphasis added). The VDSP did not terminate an existing entitlement as was done in *Arnett* and *Goldberg, see also, Cleveland Board of Education v. Laidermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), but denied an increase in compensation in which the plaintiffs held only an "abstract need or desire" or a "unilateral expectation." Because the plaintiffs have not shown a legitimate claim of entitlement, the differential does not violate due process.

## V.

### SPECIAL LEGISLATION

Lastly, the plaintiffs contend that the pay differential violates the Virginia Constitution, Art. IV § 14(10).[9] This court does not have to reach a decision on whether the differential violates § 14(10) for two reasons. First, the plaintiffs did not put this issue properly before the court until

they filed their post-trial brief. Therefore, to allow the plaintiffs to proceed on this new theory would prejudice the defendants who proceeded through the entire case without defending upon this issue.

■ Secondly, a violation of the Virginia Constitution is insufficient as a matter of law to support a favorable finding under 42 U.S.C. § 1983. While § 1983 is concerned about states' deprivation of individuals' rights, § 1983 provides a cause of action only for deprivation of rights, privileges, or immunities secured or protected by the *Constitution or laws of the United States.* 42 U.S.C. § 1983. A violation of the Virginia Constitution is not a violation under the United States Constitution, therefore, such a violation will not support a recovery under § 1983. To succeed in a § 1983 action, a plaintiff must establish a deprivation of a right secured by the Constitution or a federal law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Even if the defendants violated the Virginia Constitution, such a violation would not support a favorable judgment for the plaintiffs under § 1983. Therefore, this court need not decide this issue.[10]

In conclusion, this court finds no violation of the Constitution or laws of the United States. Therefore, plaintiffs have failed to meet an essential proof element of their § 1983 claim and this court finds in favor of defendants. A final order will be entered in accordance with this opinion.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

---

**8.** In *Arnett v. Kennedy, supra,* the agency gave the plaintiff the procedural due process prescribed by federal regulations. Plaintiff challenged the federal regulations because they did not provide for a full evidentiary hearing in a judicial tribunal before the dismissal.

**9.** The General Assembly shall not enact any local, special, or private law in the following cases:

\* \* \* \* \* \*

(10) Granting from the treasury of the Commonwealth, or granting or authorizing to be granted from the treasury of any political subdivision thereof, any extra compensation to any public officer, servant, agent or contractor. VA. CONST. art. IV, § 14(10).

**10.** The parties should not construe the court's opinion as approving the amount of the differential, nor should they interpret the opinion as even approving the differential. These matters are purely legislative and thus in the discretion of the General Assembly of Virginia. This court's opinion is addressed solely to the constitutional issues.