HCMF CORPORATION,
et al., Plaintiffs,

v.

Claude A. ALLEN, et al., Defendants.

No. CIV. A. 98–0297–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Feb. 29, 2000.

Robert Thomas Adams, Richard Cullen, Earle Duncan Getchell, Jr., Thomas J. Stallings, Robert L. Hodges, McGuire, Woods, Battle & Boothe, Richmond, VA, for plaintiffs.

Gregory E. Lucyk, Edward Meade Macon, Mark L. Earley, William Henry Hurd, Siran S. Faulders, Office of Attorney General, Richmond, VA, for defendants.

## *Memorandum Opinion*

WILSON, Chief Judge.

This is an action pursuant to 42 U.S.C. § 1983 by plaintiffs, affiliated owners or operators of seven nursing facilities in Virginia (collectively "Heritage" or the "facilities") against various state officials responsible for administering Virginia's Medicaid program (collectively "Defendants"), to redress alleged federal, statutory, and constitutional violations. In an earlier opinion, the court rejected all of Heritage's claims except a claim that Defendants violated Heritage's fourteenth amendment right to equal protection by classifying without a rational basis "nursing facilities solely on the basis of the financing structure used to construct the nursing facilities." The court noted that absent impermissible motivation the likelihood of Heritage prevailing on that claim was quite small because of the "exceptionally wide latitude afforded the state in drawing economic distinctions." But the court reserved judgment on that claim until the parties had an opportunity to engage in discovery. The case is now before the court on Heritage's motion to amend and on the parties' cross-motions for summary judgment. The court finds that Heritage's proposed amendment would be futile and that Defendants are entitled to summary judgment on Heritage's remaining equal protection claim.

### I.

In 1993, Virginia's Department of Medical Assistance Services ("DMAS") began notifying the seven Heritage nursing care facilities that those facilities had received excess reimbursement for plant costs. DMAS had reimbursed those facilities based on the interest rate on bonds the facilities obtained from local industrial development authorities ("IDA") rather than on their Federal Housing Administration ("FHA") mortgage interest rates. According to DMAS, an earlier review revealed a significant relationship between the facilities' FHA mortgage obligations and the IDA bonds secured by those mortgages. DMAS claims it discovered that those facilities were able to structure the transactions to retire fully their bond indebtedness before the expiration of their FHA mortgages. Their bond rate, therefore, according to DMAS, more accurately reflected their plant costs. Consequently, DMAS notified the facilities by "Notices of Program Reimbursement" that it would seek reimbursement for excess plant costs claimed through 1993 and would adjust their future reimbursement rates. The nursing home facilities brought suit claiming federal statutory and constitutional violations. The court found for Defendants on all claims except one-the equal protection claim now before the court-and it reserved judgment on that claim in order to have the benefit of a more fully developed factual record.

On the remaining claim, Heritage alleges that Defendants violated the Equal Protection Clause because DMAS's method for reimbursing Heritage's financing costs "classifies [its] nursing facilities solely on the basis of the financing structure used to construct the nursing facilities," (Compl.¶ 102), and does not consider the legal obligations of the nursing facilities. According to Heritage, "[n]ursing facilities that financed construction using standard FHA-insured mortgages alone are reimbursed by Defendants for interest expense based on the interest rate applicable to the mortgage, for which [those facilities are] legally obligated," (*Id.* at ¶ 103), and "[n]ursing facilities that financed construction using unrated junk bonds are reimbursed by the Defendants for interest expense based on the interest rate applicable to the unrated junk bonds, for which [those facilities are] legally obligated," (*Id.* at ¶ 104). Heritage complains, however, that nursing homes, such as Heritage, "that financed construction using rated, lower interest rate Industrial Development Bonds secured by FHA-insured mortgages, upon which the facilities are legally obligated, are not reimbursed by the De-

fendants at the interest rate applicable to the mortgage for which [those] facilities are legally obligated." (*Id.* at ¶ 105.) "Instead, under the Defendants' New Reimbursement Policy, they are reimbursed at the interest rate applicable to the Industrial Development Bonds, despite the fact that the facility is not obligated on the bonds." (*Id.*) Therefore, Heritage claims that Defendants violate the Equal Protection Clause "[b]y applying a reimbursement policy to [Heritage] that is different from the policy applied to nursing facilities that financed construction using standard mortgages or unrated 'junk' bonds." (*Id.* at ¶ 107.) Heritage alleges that "[n]o rational or legal basis exists to support Defendants' discrimination," (*Id.*) and that Defendants "are acting under color of state law in an arbitrary and capricious manner," (*Id.* at ¶ 108).

In response, Defendants assert that their application of reimbursement regulations is supported by a rational basis—"avoid[ing] overpayment, waste, and fraud." (Defs.' Br. Opp'n Pls.' Cross Mot. Summ. J. at 4.) Defendants submitted the deposition and affidavit of James D. Branham, a certified public accountant who DMAS has variously employed as an Audit Supervisor, "Cost Settlement Agent," or "Informal Appeals Agent" since 1987. As an audit supervisor, Branham's responsibilities included "reviewing audits performed by DMAS field auditors to determine whether particular costs-including mortgage and financing costs-submitted by a healthcare provider for reimbursement, were, in fact [sic] reimbursable or allowable under existing principles of Medicaid and Medicare reimbursement." (Branham Aff. at ¶ 3.) Branham discovered in 1989, in reviewing the audit of another nursing home facility with financing arrangements similar to Heritage's, that the payoff of its IDA bonds discharged that facility's mortgage before its stated maturity. Under applicable regulations, DMAS reimburses only necessary interest, and, in Branham's opinion, interest paid directly on the IDA bonds is a more accurate predictor of nec-

essary interest. (*See* Branham Dep. at 60–75.) He concluded, therefore, that the facility's reimbursable interest rate was the interest rate on its IDA bonds. He later reached the same conclusion when DMAS audited Heritage. His conclusions resulted from a better understanding of the financing arrangements involved, not from a change or a shift in policy. (*See id.* at 109–110.)

DMAS contends, therefore, that its application of regulations is fully justified because it guards against fraud, waste, and abuse. Heritage, however, has submitted the affidavit of a professor of economics, Dr. Leonard G. Schifrin, who has stated that it is his "expert opinion that there is no economic theory that supports the DMAS in its adoption of the bond rate of interest as the surrogate for the actual mortgage rate of interest adjusted for early payoff."

Heritage has moved to amend its complaint, essentially recasting an earlier claim, to include a count alleging that Defendants are violating the reimbursement rate requirements of the Boren Amendment, and both parties have moved for summary judgment on the equal protection claim. This court addresses the motion to amend and the cross motions for summary judgment, in turn.

## II.

Heritage's proposed amendment alleges that "Defendant's [R]eimbursement Policy for HCMF Violates the Reimbursement Rate Requirements Applicable under the Boren Amendment to Nursing Facilities Providing Medical Services to Low–Income Medicaid Recipients in Virginia and [T]hereby [V]iolates 42 U.S.C. § 1983." Heritage bases this claim on the recent Ninth Circuit decision *Children's Hospital & Health Center v. Belshe,* 188 F.3d 1090 (9th Cir.1999). In that case, the Ninth Circuit held that the repeal of the Boren Amendment did not render moot a challenge to the validity of the Medicaid reim-

bursement rate methodology adopted by the California Department of Health Services. *See* 188 F.3d at 1095. The court held that, since California had decided to continue using rates that were set prior to the repeal of the Boren Amendment without subjecting those rates to a public process, California was still required to apply those rate methodologies in a manner consistent with the repealed Boren Amendment. *See* 188 F.3d at 1095. Based on the reasoning of the Ninth Circuit, Heritage asserts that it has a new claim. The court disagrees.

Heritage ignores the fact that the court has already ruled on this question of law and found that no such claim exists. *See HCMF*, 26 F.Supp.2d at 878–80. As Defendants stated in their memorandum in opposition to Heritage's motion to amend, the plaintiffs' motion "is essentially another request for this Court to reconsider its November 9, 1998 Memorandum Order and Opinion [sic]—dressed up with discussion of the Ninth Circuit's recent decision . . . ." This court specifically addressed the applicability of the Boren Amendment in that opinion:

> With the repeal of the Boren Amendment nothing remains that remotely resembles a federal right to reasonable and adequate rates. There is no federal statutory rate language to parse. There is only a state standard. It follows that there can be no prospective relief under § 1396a(a)(13) and that the court must dismiss Heritage's reimbursement claim for lack of federal jurisdiction.

26 F.Supp.2d at 880. If the Ninth Circuit has held to the contrary, HCMF should take that up in an appeal, not in a motion to amend.[1]

■ HCMF's motion to amend does not assert any new legal theory and, therefore, is futile. Thus, HCMF's motion to amend is denied. *See Shafer v. Preston Mem'l*

*Hosp. Corp.*, 107 F.3d 274, 282 (4th Cir. 1997) (holding that, upon conclusion that plaintiff's proposed amendment was futile, district court correctly denied plaintiff's motion to amend); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers*, 18 F.3d 1161, 1164 (4th Cir.1994) ("A court may refuse to allow leave to amend when the proposed changes would be futile."); *see also United States Dev. Corp. v. Peoples Fed'l Sav. & Loan Assoc.*, 873 F.2d 731, 736 n. 4 ("The proper way to handle [last-second amendments alleging meritless claims] is not to allow amendment and then enter summary judgment against the new claim without notice. Rather, a court should deny leave to amend on the grounds of futility.").

## III.

■ Heritage claims that DMAS's decision in applying the regulations to them violates the Equal Protection Clause of the Fourteenth Amendment and is, therefore, unconstitutional. However, Heritage admits that this application of regulations "concerns 'a type of economic activity that does not impact any suspect or quasi-suspect class or fundamental right.'" (Pls.' Mem. Supp. Cross Mot. Summ. J. at 10) (quoting *Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel*, 20 F.3d 1311, 1320 (4th Cir.1994)). As such, the decision must be "accorded a strong presumption of validity and must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Plyler v. Moore*, 100 F.3d 365, 373 (4th Cir. 1996), *cert. denied*, 520 U.S. 1277, 117 S.Ct. 2460, 138 L.Ed.2d 217 (1997) (quotations and citations omitted). Thus, this court can find an equal protection violation "only if the 'varying treatment of different groups is so unrelated to the achievement

---

1. The court notes that the Third Circuit has since published an opinion agreeing with this court that "Congress has removed a party's ability to enforce a substantive right" with regard to a state's establishment of Medicaid reimbursement rates. *See Children's Seashore House v. Waldman*, 197 F.3d 654, 659 (3d Cir.1999).

of any combination of legitimate purposes' that this court can only conclude that [the defendant's] actions were irrational." *Eldridge v. Bouchard*, 645 F.Supp. 749, 755 (W.D.Va.1986) (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)).

█ In addition, the burden rests on Heritage to "disprove the existence of 'every conceivable basis which might support [the decision].'" *Plyler*, 100 F.3d at 373 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)). "Rational basis review is thus a paradigm of judicial restraint prohibiting [the court] from sitting as a super-legislature to judge the wisdom or desirability of [governmental] policy determinations underlying the [challenged decision]." *Id.* at 373–74 (quotations and citations omitted). "[S]imply because [Defendants] might have furthered [their] underlying purpose more artfully, more directly or more completely, does not warrant a conclusion that the method it chose is unconstitutional." *Eldridge*, 645 F.Supp. at 755. Therefore, once the court determines that "a plausible reason exists for the [decision] … [the court's] inquiry is at an end." *Plyler*, 100 F.3d at 374.

Because the parties are cross-moving for summary judgment and both have offered evidence in support of their respective motions, the court must analyze whether either party has met its respective burden of production under Rule 56 as to the policy's rationality or irrationality. If the evidence construed in the light most favorable to Defendants shows that there is no reasonably conceivable rational basis for the reimbursement policy, and the court cannot conceive of a rational basis, then Heritage is entitled to summary judgment. Alternatively, if the evidence, construed in the light most favorable to Heritage, shows

that there is a reasonably conceivable rational basis for the policy, then Defendants are entitled to summary judgment. Finally, if the evidence creates a disputed issue of material fact as to the policy's rationality, then neither party is entitled to summary judgment.

The basic disagreement between the parties is over DMAS's decision to reimburse Heritage based on the interest rate on the IDA bonds instead of the higher mortgage interest rate. Heritage argues that Defendants' decision to use "the bond rate as a surrogate for the adjusted mortgage rate, despite the different capital markets and independent variables," is based on "nothing more than an *ipse dixit* assertion that is itself arbitrary." (Pls.' Mem. Supp. Cross Mot. Summ. J. at 3.) As such, Heritage contends that Defendants "acted arbitrarily and irrationally," and their decision to base reimbursement on the bond rates was, therefore, unconstitutional.

Defendants respond that DMAS acted "to avoid overpayment, waste, and fraud." (Defs.' Br. Opp'n Pls.' Cross Mot. Summ. J. at 2.) Under applicable regulations, DMAS is required to limit reimbursements to necessary interest that is actually incurred. *See* Va. Admin. Code § 30–90–30; *Medicare Provider Reimbursement Manual*, HCFA Pub. 15–1, ch. 2 secs. 202.1, 202.2 (Dep't Health & Human Services).[2] Based on his experience with similar financing arrangements and his understanding of the regulations, Branham determined that the interest paid on the IDA bonds was a more accurate predictor of necessary interest. When, in his deposition testimony, Branham was asked the basis for the decision to reimburse the bond rate instead of the mortgage rate, he answered:

It's an application of the regulations. The regulations are in the Medicare

---

**2.** Va. Admin. Code § 30–90–20(5) states that Medicare principles of reimbursement set forth in the *Medicare Provider Reimbursement Manual* shall apply absent a superseding state

regulation. The *Medicare Provider Reimbursement Manual* was attached as Exhibit A to the Plaintiff's Cross–Motion for Summary Judgment.

Provider Reimbursement Manual which provides for the reimbursement of interest expense incurred. There are several qualifications of necessary and [sic] related to patient care and what not. And we applied those regulations in a reasonable manner to the factual circumstances as we became aware of them. And the facts are that the underlying debt and costs are those of the bonds in that the mortgage note is just an interrelated part of that whole transaction to be a means to secure the bonds and repay the bonds.

(Branham Dep. at 103.) According to Branham, "[t]he system is set up to reimburse the cost incurred," and "what is incurred is the interest on the bonds." (Branham Dep. at 36.) And that, both Branham and Defendants assert, was the basis for DMAS's conclusion that Heritage should be reimbursed at the bond rate instead of the mortgage rate.

■ Thus, Defendants have provided unrefuted testimony that they decided to reimburse the mortgage rate because they concluded that it more accurately reflected the cost incurred. That decision was based on audit findings and the application of existing regulations. As such, the Defendants contend that the action clearly passes the rational basis test:

Where as here, the repayment vehicle (the mortgage) carries a higher interest rate than the rate established for repayment of certain IDA bonds issued to finance the construction at issue and provides for a longer term of indebtedness, while simultaneously authorizing and anticipating early mortgage forgiveness upon repayment of the bonds, it is reasonable for DMAS to look at the financing arrangement as a whole to determine what the *actual* interest cost will be. In this instance when DMAS did so, it determined that the HCMF facilities' actual interest cost over the term of the financing will parallel the bond rates and not the mortgage rates claimed by HCMF. This finding, even if

not mathematically exact, meets the standards articulated by the U.S. Supreme Court in any number of equal protection cases.

(Defs.' Br. Supp. Mot. Summ. J. at 8.) The court agrees.

Although Heritage's numerous briefs raise various issues, they challenge the ultimate effect and wisdom of Defendants' decision, not the claimed basis. Heritage argues that their financing scheme would save the state money and should, therefore, be encouraged. Additionally, Heritage complains that Defendants should have attempted a more exact recalculation of the effect of Heritage's financing arrangement. Moreover, Heritage has submitted the affidavit of an expert witness disagreeing with the economic theory underlying DMAS's decision. Such assertions indicate that Heritage misunderstands the court's role in a non-fundamental rights equal protection claim. It is not the court's role to determine what decision would have been the wisest. Neither is it the court's role to determine whether Defendants' decision was correct or based on an accurate understanding of the facts or economic theory. Instead, the court merely decides whether the decision to reimburse based on the bond rates was "so unrelated to the achievement of any combination of legitimate purposes" as to be "irrational." See *Eldridge,* 645 F.Supp. at 755. If not, the court's inquiry ends. Defendants have presented an unrefuted, plausible reason for the decision. Although Heritage may disagree with that reason and may have valid normative criticisms of it, the court determines that the evidence, construed in a light most favorable to Heritage, still demonstrates that there was a rational basis underlying the reimbursement decision. Therefore, the court grants Defendants' motion for summary judgment on the remaining equal protection claim and denies Heritage's cross motion.

649

## IV.

For the foregoing reasons, Heritage's motions to amend and for summary judgment are denied, and Defendants' motion for summary judgment is granted.