**Terry S. WARDWELL,
Plaintiff-Appellant,**

v.

**The BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF CINCINNATI et al., Defendants-Appellees.**

**No. 75–1498.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1975.

Decided Feb. 11, 1976.

Rehearing En Banc Denied
March 15, 1976.

**626**

Frank G. Davis, Gorman, Davis & Hengelbrok, Cincinnati, Ohio, for plaintiff-appellant.

Paul H. Tobias, Cincinnati, Ohio, for defendants-appellees.

Before MILLER and ENGEL, Circuit Judges, and CHURCHILL,* District Judge.

WILLIAM E. MILLER, Circuit Judge.

This appeal requires us to consider the constitutionality of a rule adopted by the Board of Education of the City of Cincinnati requiring all teachers in the Cincinnati schools hired after November 13, 1972, to establish within 90 days of employment residency within the city school district.

In December, 1972, plaintiff, Terry Wardwell, was hired to teach in the Cincinnati schools. As a condition of employment he agreed to move into the city school district pursuant to a rule announced by the school superintendent in November, 1972, that all newly-employed teachers must establish residence within the district within 30 days after employment. In January, 1973, the Board adopted the following resolution, essentially ratifying the superintendent's rule:

> "RESOLVED, That any employee hired by the Cincinnati Schools after November 13, 1972 must either reside within the Cincinnati School District, or agree, as a condition of employment, to establish residency within the district within ninety days of employment. Employees who live in the district must continue to reside therein as long as they are so employed. This policy does not affect in any way personnel hired before the above date."

Plaintiff Wardwell lived outside the district but within the State of Ohio. Despite the requirement he failed to change his residence. He filed the present action in July, 1973, under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, challenging the residency requirement on equal protection grounds and seeking injunctive relief and attorney's fees. No preliminary injunction was requested because enforcement of the rule had been stayed by a preliminary injunction issued by a state court. Since being hired, plaintiff Wardwell has taught at one time in a predominantly white school located within a ten minute drive from his

---

* The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

home and later at a predominantly black school about twenty minutes from his home outside the district.

The district court denied the request for an injunction and upheld the validity of the rule, relying heavily on the Fifth Circuit's reasoning in *Wright v. City of Jackson*, 506 F.2d 900 (5th Cir. 1975).

Plaintiff argues that the Board's residency requirement infringes his constitutionally protected right to travel as defined in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and in *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), extending the protection, as he contends, to both intrastate and interstate travel and embracing as a necessary corollary the right to remain in one place.

■ We find no support for plaintiff's theory that the right to intrastate travel has been afforded federal constitutional protection. An examination of *Shapiro, supra, Dunn, supra,* and the Supreme Court's more recent opinion in *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), convinces us that the aspect of the right to travel with which the Court was concerned in those cases is not involved here. It is clear that the Court was dealing with the validity of durational residency requirements which penalized recent interstate travel.[1] Such *durational* residency requirements or restrictions affecting the interstate aspect of travel will not pass constitutional muster "absent a compelling state interest."

In *Memorial Hospital, supra* at 254–55, 94 S.Ct. at 1080, the Court at some length emphasized that *Shapiro* and the later cases were not to be construed as applying to bona fide *continuing*, as distinguished from *durational*, residency requirements when it said:

The right of interstate travel has repeatedly been recognized as a basic constitutional freedom. Whatever its ultimate scope, however, the right to travel, was involved in only a limited sense in *Shapiro*. The Court was there concerned only with the right to migrate, "with intent to settle and abide" or, as the Court put it, "to migrate, resettle, find a new job, and start a new life." *Id.*, at 629, 89 S.Ct., at 1328. Even a bona fide residence requirement would burden the right to travel, if travel meant merely movement. But, in *Shapiro*, the Court explained that "[t]he residence requirement and the one-year waiting-period requirement are distinct and independent prerequisites" for assistance and only the latter was held to be unconstitutional. *Id.*, at 636, 89 S.Ct., at 1332. Later, in invalidating a durational residence requirement for voter registration on the basis of *Shapiro*, we cautioned that our decision was not intended to "cast doubt on the validity of appropriately defined and uniformly applied bona fide residence requirements." *Dunn v. Blumstein*, 405 U.S. 330, 342 n. 13, 92 S.Ct. 995, 1003 [31 L.Ed.2d 274] (1972). [footnotes omitted]

■ Our conclusion that *Shapiro* and the other right to travel cases are not applicable to intrastate travel and *continuing* employee residency requirements is supported by *Detroit Police Officers Association v. City of Detroit*, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972), on which the district court in this case and the Fifth Circuit in *Wright, supra,* relied. The case involved a Detroit residency requirement for policemen. The Michigan Supreme Court, applying the "rational basis test," determined that the classification bore a reasonable relationship to the object of the legislation and was therefore valid. *Detroit Police Officers Association v. City of Detroit*, 385 Mich. 519, 190 N.W.2d 97 (1971). The Supreme Court in a brief order dismissed the appeal "for want of a substantial

---

1. The Supreme Court in *Memorial Hospital, supra* at 255–56, 94 S.Ct. 1076, refused to decide whether a constitutional distinction can be drawn between interstate and intrastate travel. In so doing, the Court made clear that it was only considering the infringement of the right of interstate travel which had occurred in that case.

federal question." While we do not consider it necessary to base the result in the present case primarily on *Detroit Police Officers*, we recognize that the Supreme Court's dismissal of the appeal "for want of a substantial federal question" is a decision on the merits of the case appealed. *Ahern v. Murphy*, 457 F.2d 363 (7th Cir. 1972).[2] We conclude that the "compelling state interest" test is the applicable test in cases involving infringement of the right to interstate travel by *durational* residency requirements. On the other hand, where, as in the present case, a *continuing* employee residency requirement affecting at most the right of intrastate travel is involved, the "rational basis" test is the touchstone to determine its validity.[3]

We find a number of rational bases for the residency requirement of the Cincinnati School Board. The Cincinnati school superintendent testified that promulgation of the rule was based on the following conclusions: (1) such a requirement aids in hiring teachers who are highly motivated and deeply committed to an urban educational system, (2) teachers who live in the district are more likely to vote for district taxes, less likely to engage in illegal strikes, and more likely to help obtain passage of school tax levies, (3) teachers living in the district are more likely to be involved in school and community activities bringing them in contact with parents and community leaders and are more likely to be committed to the future of the district and its schools, (4) teachers who live in the district are more likely to gain sympathy and understanding for the racial, social, economic, and urban problems of the children they teach and are thus less likely to be considered isolated from the communities in which they teach, (5) the requirement is in keeping with the goal of encouraging integration in society and in the schools. These conclusions appear to us clearly to establish rational bases for the residency requirement imposed by the Cincinnati Board.

Appellant insists that the basic purpose of the residency rule is to advance "quality integrated" education and to help in eliminating racial segregation in the community and school system. The rule is not rationally related to this objective, appellant claims, because school and community integration would only be promoted by requiring teachers to live in the attendance districts of the schools at which they teach. Integration is not encouraged, it is argued, by a regulation such as the present which requires teachers to live somewhere in the district at large when the district itself contains many segregated areas. This argument overlooks the various other convincing and rational bases for adoption of the rule. Although it is possible that the rule will not materially contribute to racial integration, we consider that the numerous other legitimate objectives of the rule are wholly ade-

---

2. Plaintiff argues that *Detroit Police Officers* does not support the conclusion that employee residency requirements which affect interstate travel are to be tested by the rational basis test. He contends that since that case involved policemen who needed to be near the city to protect it in times of emergency, the Supreme Court's decision should be read to say only that the residency requirement for policemen was justified by a compelling state interest. If read narrowly, *Detroit Police Officers* does tell us only that the residency requirement in that case was constitutional and not what test was appropriate for determining *its* constitutionality. However, it is unlikely that the Supreme Court would have dismissed "for want of a substantial federal question" if it felt that the Michigan Supreme Court had

applied an inappropriate equal protection test since appellant argued that a fundamental right was involved and that the "compelling state interest" test was proper.

3. We have assumed, arguendo, that the right to travel embraces the right not to travel or to remain in one place. Such an alleged constitutional right, however, has never been dealt with by the Supreme Court. Nor have other courts dealing with residency requirements recognized it. *See, e. g., Wright v. City of Jackson*, 506 F.2d 900 (5th Cir. 1975); *Abrahams v. Civil Service Comm'n*, 65 N.J. 61, 319 A.2d 483 (1974); *Ector v. City of Torrance*, 10 Cal.3d 129, 109 Cal.Rptr. 849, 514 P.2d 433 (1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974).

quate to demonstrate that the residency classification fully comports with the rational basis test. Many other courts have recognized the importance of employees being highly committed to the area in which they work and motivated to find solutions for its problems. *See Wright v. City of Jackson, supra* at 903–04; *Krzewinski v. Kugler*, 338 F.Supp. 492, 499–500 (D.N.J.1972) (applying "compelling state interest" test); *Abrahams v. Civil Service Comm'n*, 65 N.J. 61, 72, 319 A.2d 483, 489 (1974); *Ector v. City of Torrance*, 10 Cal.3d 129, 135, 109 Cal.Rptr. 849, 852, 514 P.2d 433, 436 (1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974); *Williams v. Civil Service Comm'n of Detroit*, 383 Mich. 507, 517, 176 N.W.2d 593 (1970); *Kennedy v. City of Newark*, 29 N.J. 178, 184, 148 A.2d 473, 476 (1959). Such commitment and motivation, it is not unreasonable to suppose, may best be fostered by requiring teachers to live and pay taxes in the place in which they are employed to work.

■ Other arguments against the validity of this residency requirement are advanced. First, it is said that the right to teach, which in Ohio is controlled by state law through the issuance of a teaching certificate, entitles a teacher to be considered for employment only on his merits as prescribed by statute. This right may not be withheld on constitutionally impermissible grounds. The state certification of teachers distinguishes teachers as a group from municipal employees performing other functions. We agree with appellee, however, that the possession of an Ohio certificate establishes only that a teacher has met certain minimum standards. It does not entitle him to a teaching position with any particular local school board. Local boards are free to impose additional qualifications and conditions of employment or to adopt higher standards. See Ohio Revised Code 3319.07.

■ Finally, appellant argues that the residency requirement is invalid because it requires newly-hired teachers to move into and remain in the district and permits those already hired to remain or move outside the district. Appellee replies that distinguishing between new teachers and teachers with experience who may have tenure and who did not know of the requirement when they accepted employment, is a reasonable distinction which the state is free to make. While we recognize that the limited applicability of the rule may be its most questionable feature, we do not believe that the residency requirement must fail because it does not apply to all teachers employed by the Cincinnati schools. The Supreme Court has pointed out that there is no constitutional requirement that regulations must cover every class to which they might be applied, *see United States v. Carolene Products Co.*, 304 U.S. 144, 151, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). It has further stated that "if the classification has some reasonable basis, it does not offend the constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

Affirmed.