**Lakendus COLE and Leon Edmond, individually and as representatives of all others similarly situated, Plaintiffs,**

v.

**CITY OF MEMPHIS, Tennessee, and Robert Forbert, Samuel Hearn, Christopher Bing, John Faircloth, Cari Cooper, and Robert Skelton, individually and in their official capacities as City of Memphis Police Officers, Defendants.**

No. 2:13–cv–02117–JPM–dkv.

United States District Court, W.D. Tennessee, Western Division.

Signed Jan. 18, 2015.

---

Bryan Meredith, Robert L.J. Spence, Jr., Spencewalk, PLLC, Emmett Lee Whitwell, The Spence Law Firm, PLLC, Memphis, TN, for Plaintiffs.

J. Michael Fletcher, Michael Fletcher Law Office, Zayid A. Saleem, City Attorney's Office, Deborah E. Godwin, John Michael Ryall, Mary Elizabeth McKinney, Godwin Morris Laurenzi & Bloomfield, P.C., Memphis, TN, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF MEMPHIS' MOTION FOR SUMMARY JUDGMENT**

JON P. McCALLA, District Judge.

Before the Court is Defendant City of Memphis' Motion for Summary Judgment, filed October 27, 2014. (ECF No. 92.) Plaintiffs Cole and Edmond filed a Response on November 24, 2014. (ECF No. 97.) Defendant City of Memphis filed a Reply on December 8, 2014. (ECF No. 101.) For the reasons set for below, the Motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff Lakendus Cole is a police officer employed with the City of Memphis Police Department Organized Crime Unit, and Plaintiff Leon Edmond is a Special Agent employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives. (Compl. at 1–2, ECF No. 1.)

Plaintiffs assert a class action claim against Defendant City of Memphis ("the City") for

> the policy, procedure, custom, or practice by which police officers of the Memphis Police Department ("MPD") order all persons to immediately leave the sidewalks and street on Beale Street when there are no circumstances present which threaten the safety of the public or MPD police officers ("the Beale Street [ ] Sweep").

(*Id.* at 2.) According to Plaintiffs, "[t]he Beale Street [ ] Sweep routinely occurs in the early morning hours on Saturdays and Sundays and during certain scheduled entertainment events on weekdays." (*Id.*) Plaintiffs assert that the Beale Street Sweep "incites violence amongst its employee police officers and creates an environment where they become aggressive, agitated, frenetic, and confrontational with persons lawfully standing on a sidewalk or upon Beale Street." (*Id.*)

Under 42 U.S.C. § 1983, Plaintiffs Cole and Edmond also assert claims individually against the City of Memphis. "Plaintiff Cole, while off-duty and dressed in civilian clothing, was outside of Club 152 on Beale Street...." (*Id.* ¶ 30.) "Plaintiff Cole was not intoxicated and had not consumed an alcoholic beverage." (*Id.* ¶ 31.) "Pursuant

to the Beale Street Sweep, prior to Plaintiff exiting Club 152, MPD police officers including the Individual Defendants ordered all individuals to immediately leave the sidewalks and street in the Beale Street Entertainment District." (*Id.* ¶ 32.) "The Individual Defendants suddenly grabbed Plaintiff Cole and[,] without reasonable cause to do so[,] began to assault and viciously attack him." (*Id.* ¶ 35.) "The Individual Defendants slammed Plaintiff Cole's body into the police vehicle twice with such force that the impact dented the body of the police vehicle." (*Id.* ¶ 36.) The Individual Defendants handcuffed Plaintiff Cole, placed him in the back of the police vehicle, and transported Plaintiff Cole to the Shelby County Jail. (*Id.* ¶¶ 37–38.) All criminal charges were later dismissed. (*Id.* ¶ 41.)

"Plaintiff Edmond, while off-duty and dressed in civilian clothing and visiting Memphis[,] was walking in the Beale Street Entertainment District enjoying the sights and music." (*Id.* ¶ 46.) "Plaintiff Edmond was not intoxicated." (*Id.* ¶ 47.) As Plaintiff Edmond attempted to enter Club 152 on Beale Street, "Plaintiff Edmond and other family members were approached by Defendant Cooper who ordered Plaintiff Edmond and his family member [sic] to stop walking and demanded that they speak to her regarding their attempt to enter Club 152." (*Id.* ¶ 51.) "Defendant Cooper and Defendant Skelton placed Plaintiff Edmond under arrest for public intoxication." (*Id.* ¶ 54.) After advising Defendant Cooper and Defendant Skelton that Plaintiff Edmond was a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), MPD police officers contacted Plaintiff Edmond's supervisor, who contacted another ATF special agent Marcus Watson in charge of the Memphis Field Office. (*Id.* ¶¶ 55–57.) Watson arrived on the scene, Plaintiff Edmond was released from police custody. (*Id.* ¶ 58.)

Defendant City of Memphis claims that the practice of "advis[ing] patrons standing on Beale Street at 2:30am to make their way into a club or make preparations to leave Beale Street" and, after 3:00 a.m., "uniformly ordering patrons off of Beale Street, with the option of entering a club" has been "abandoned by order of MPD command staff." (Def. City's Resp. to Pl.'s Mot. ¶¶ 1–2, ECF No. 40.) City of Memphis also contends and that "[a]t no time subsequent to June 21, 2012 did the MPD engage in this practice." (*Id.* ¶ 2.) Instead, City of Memphis asserts that Cole's and Edmond's interactions with police as described in their Complaint were MPD responses to reports of illegal conduct. (*Id.* ¶¶ 3–6.)

The City of Memphis contends that on August 26, 2012, MPD officers responded to a disorderly conduct call near 152 Beale Street, where "Officers instructed Plaintiff Cole to go inside the club [Club 152] or leave the street. Plaintiff Cole refused to comply and acted disrespectfully towards the officers." (*Id.* ¶¶ 3–4 (alteration in original).)

Defendant City of Memphis asserts that on May 5, 2012, "MPD officers responded to a disturbance call at the entrance to 152 Beale." (*Id.* ¶ 5.) "At that time officers came upon a visibly intoxicated Plaintiff Edmonds in an altercation with the doorman and bouncers at 152 Beale. MPD officers removed Plaintiff from the area and discovered that he was presently armed with a GLOCK Model 27.40 caliber pistol." (*Id.* ¶ 6.)

**B. Procedural History**

On February 25, 2013, Lakendus Cole and Leon Edmond (collectively, "Plaintiffs" or "Named Plaintiffs") filed a Class Action Complaint for damages and a Complaint for deprivation of constitutional rights and injunctive relief. (Compl. ECF

No. 1.) On April 4, 2013, Defendant Cari Cooper filed an Answer. (ECF No. 6.) On April 11, 2013, Defendant City of Memphis filed an Answer. (ECF No. 8.) On June 14, 2013, Defendant Robert Skelton filed an Answer. (ECF No. 25.) On June 18, 2013, Defendants Christopher Bing, John Faircloth, Robert Forbert, and Samuel Hearn filed an Answer. (ECF No. 27.)

On April 2, 2013, Defendants Robert Forbert and John Faircloth filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 5.) On April 10, 2013, Plaintiffs filed a Response in opposition to the Motion to Dismiss. (ECF No. 7.) On June 4, 2013, the Court entered an Order granting in part and denying in part the Motion to Dismiss. (ECF No. 22.) The Court found that Plaintiffs have stated a claim pursuant to Rule 8(a) of the Federal Rules of Civil Procedure but dismissed Plaintiffs' substantive due-process claim under the Fourteenth Amendment as to Defendants Robert Forbert and John Faircloth. (ECF No. 22.)

On May 16, 2013, Defendant Christopher Bing filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 12.) On May 28, 2013, Plaintiffs filed a Response in opposition to the Motion to Dismiss. (ECF No. 13.) On June 6, 2013, the Court entered an Order granting in part the Motion to Dismiss as to Plaintiffs' substantive due-process claim under the Fourteenth Amendment but denying in part the Motion as to all other claims against Bing. (ECF No. 23.)

On May 31, 2013, Defendant Samuel Hearn filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 21.) No Response was filed within the required time. On July 10, 2013, the Court entered an Order granting in part the Motion to Dismiss as to Plaintiffs' substantive due-process claim under the Fourteenth Amendment but denying in part the Mo-

tion as to all other claims against Hearn. (ECF No. 29.)

On November 27, 2013, Plaintiffs filed the Motion to Certify Class. (ECF No. 36.) Defendant City of Memphis filed a Response on December 18, 2013. (ECF No. 40.) On January 9, 2014, the Court held a hearing on the Motion. (ECF No. 42.) Plaintiffs filed a Supplemental Memorandum of Law in support of its Motion for Class Certification on June 30, 2014. (ECF No. 85.) Defendant filed its Response to the Supplemental Memorandum on July 7, 2014 (ECF No. 86), and Plaintiffs filed their Reply on July 14, 2014 (ECF No. 87). On September 29, 2014, the Court granted in part and denied in part Plaintiffs' Motion to Certify Class. (ECF No. 88.) In the Court's Order, the Court certified Plaintiffs' proposed class under Rule 23(b)(2) for the purposes of injunctive and declaratory relief, and denied certification under Rule 23(b)(3). (ECF No. 88 at 41.)

On October 23, 2014, Plaintiffs filed a Notice of Dismissal with Prejudice of Plaintiffs' Claims Against the Individual Officers upon Stipulation of the Parties. (ECF No. 91.) The Court dismissed Plaintiffs' claims against all individual officers with prejudice in an order entered October 27, 2014. (ECF No. 93.)

On October 27, 2014, the Defendant City of Memphis filed the instant Motion for Summary Judgment. (ECF No. 92.) Plaintiffs filed a Response in Opposition on November 24, 2014. (ECF No. 97.) Defendant filed a Reply on December 8, 2014. (ECF No. 101.)

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see*

also *Chapman v. UAW Local 1005,* 670 F.3d 677, 680 (6th Cir.2012). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't,* 687 F.3d 771, 776 (6th Cir.2012) (citing *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984)). "A dispute over material facts is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman,* 670 F.3d at 680 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Kalich v. AT & T Mobility, LLC,* 679 F.3d 464, 469 (6th Cir.2012).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt,* 679 F.3d 443, 448 (6th Cir.2012) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e)).

"To show that a fact is, or is not, genuinely disputed, both parties are required to either 'cite[ ] to particular parts of materials in the record' or 'show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Bruederle,* 687 F.3d at 776 (alterations in original) (quoting Fed.R.Civ.P. 56(c)(1)); *see also Mosholder,* 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548)).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3); *see also Emerson v. Novartis Pharm. Corp.,* 446 Fed.Appx. 733, 736 (6th Cir. 2011) (" '[J]udges are not like pigs, hunting for truffles' that might be buried in the record." (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991))); *Chi. Title Ins. Corp. v. Magnuson,* 487 F.3d 985, 995 (6th Cir.2007) ("A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989))).

"In considering a motion for summary judgment, [a court] must draw all reasonable inferences in favor of the nonmoving party." *Phelps v. State Farm Mut. Auto. Ins. Co.,* 736 F.3d 697, 703–04 (6th Cir. 2012) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard,* 692 F.3d 523, 529 (6th Cir.2012) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

## III. ANALYSIS

Defendant City of Memphis seeks summary judgment on the grounds that Plaintiffs have failed to establish a case for 1) municipal liability generally; 2) violation of Plaintiffs' First Amendment rights; 3) violation of Plaintiffs' Fourth Amendment rights; 4)violation of Plaintiffs' due process rights under the Fourteenth Amendment; 5) municipal liability for failure to train; 6) municipal liability for failure to investigate and discipline; 7) municipal liability pursuant to the Tennessee Government Tort Liability Act (TGTLA); and 8) punitive damages. (*See* ECF Nos. 92–2, 101.) Plaintiffs concede that the record and relevant case law do not support claims for "failure to train, investigate or discipline, a claim under the Governmental Tort Liability Act, and a claim for punitive damages." (ECF No. 97 at 2 n. 1.) Accordingly, the Court GRANTS Defendants' Motion as to those claims. Plaintiffs also state that they "do not assert that their rights under the First Amendment were violated." (*Id.*) As no claim for First Amendment violations appears in the Complaint (ECF No. 1), the Court finds that Plaintiffs have not asserted a First Amendment claim in this case. The Court will address the remaining disputed claims in turn.

### A. Municipal Liability Generally

 Unlike state government entities, "[l]ocal governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" for conduct that infringes the constitutional rights of individuals. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities are not subject to respondeat superior liability in cases where liability "does not arise out of the municipality's own wrongful conduct." *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 131 S.Ct. 447, 453, 178 L.Ed.2d 460 (2010); *Monell*,

436 U.S. at 691, 98 S.Ct. 2018 ("In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Accordingly, to succeed on a claim against the City of Memphis, Plaintiffs "must prove two basic elements: (1) that a constitutional violation occurred; and (2) that the [City] is responsible for that violation." See *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 382 (6th Cir.2004) (internal quotation marks omitted).

### 1. Constitutional Violations

The merits of Plaintiffs' claims for constitutional violations are discussed *infra* Parts III.B–C. The Court finds a genuine issue of material fact exists as to whether the Beale Street Sweep is facially unconstitutional under the Due Process Clause of the Fourteenth Amendment, and whether the Beale Street Sweep is unconstitutional under the Fourth Amendment as applied to Plaintiffs Cole and Edmond.

### 2. City of Memphis' Responsibility for Constitutional Violations Suffered by Plaintiffs

██ Municipal liability exists in circumstances where an "official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. "A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham*, 358 F.3d at 383 (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993)).

### a) Existence of Policy or Custom

██ A plaintiff bringing a claim under § 1983 against a municipality must prove

the existence of an official policy responsible for the constitutional deprivation, or alternatively prove that the constitutional deprivations were caused by "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. A custom sufficient to establish municipal liability under § 1983 exists where "practices of [local] officials [are] so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (internal citations and quotation marks omitted); *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.,* 103 F.3d 495, 507 (6th Cir.1996). Plaintiffs have identified the Beale Street Sweep as a municipal custom that resulted in the violation of Plaintiffs' Fourth and Fourteenth Amendment rights.

■ Defendant City of Memphis argues that municipal liability fails in the instant case because it has provided evidence that no policy or custom, referred to as the Beale Street Sweep, existed at the time the named Plaintiffs Cole and Edmond allegedly suffered their injuries. (*See* ECF No. 92–2 at 7.) Although Defendant City of Memphis concedes that an official Beale Street Sweep practice existed prior to June 14, 2012, it asserts that the practice was terminated prior to the time Plaintiffs Cole and Edmonds' claims arose. (*Id.* at 9–10.)

Plaintiffs contend that they have submitted ample evidence of the Beale Street Sweep custom that existed after June 14, 2012. (*See generally* ECF No. 97 at 2–8.) According to Plaintiffs, they have submitted evidence of the City of Memphis' unconstitutional policy in the form of its answer to an interrogatory, in which the City of Memphis stated in relevant part:

Prior to June 21, 2012,[1] it was common practice at 2:30 a.m. to start advising patrons standing on Beale Street to make their way into a club or make preparations to leave Beale Street. After 3:00 a.m., and when necessary, MPD officers would on occasion follow a practice of uniformly ordering patrons off of Beale Street, with the option of entering a club.

(*Id.* at 18 (citing ECF No. 32; Int. No. 9).) Regarding evidence of a custom that persisted after June 14, 2012, Plaintiffs assert that "the Affidavit of Justin Hipner, the Plaintiffs' testimony, and the City's Interrogatory Answers clearly establish that the Beale Street Sweep is a permanent and well-settled practice which, on each occasion it was used, deprived hundreds, if not thousands, of individuals of their constitutional rights." (ECF No. 97 at 18.)

The City of Memphis concedes that a "common practice" to remove individuals from the Beale Street area in the early morning hours existed prior to June 14, 2012 in its Reply Brief (ECF No. 101 at 3), in Deputy Chief Arley Knight's deposition (ECF 40–1 at 2), and in its answer to interrogatory no. 9 in Plaintiffs' First Set of Interrogatories (ECF No. 32 at 6–7). The City of Memphis contends, however, that the practice "happened only on occasion and when circumstances impacting public safety dictated." (ECF No. 101 at 3.) Accordingly, the Court finds that Plaintiffs have provided sufficient evidence to raise a genuine issue of material fact as to the existence of a custom sufficient under municipal liability requirements prior to June 14, 2012.

---

1. The date stated in City of Memphis' interrogatory answer, differs from the date asserted in Defendant's Motion and Reply. Without making a factual determination, the Court will assume the date the official practice was allegedly terminated is June 14, 2012 for the limited purposes of this Order.

With regards to the existence of a custom on or after June 14, 2012, the Court also finds that Plaintiffs have provided sufficient evidence to establish a genuine issue of material fact. Plaintiffs Cole and Edmond have provided deposition testimony that a sweep and clearing occurred on the nights that they were arrested. (ECF No. 97–1 at PageID 1021; ECF No. 97–3 at PageID 1064–67.) Although Defendant has provided deposition testimony from Deputy Chief Knight that the Beale Street Sweep practice was terminated on June 14, 2012 in rebuttal of Plaintiffs' allegations, this statement alone does not support a finding that no reasonable jury could find for Plaintiffs on the issue of whether the Beale Street Sweep persisted after June 14, 2012.

**b) Causation of a constitutional tort**

 Plaintiffs must also show that the municipal policy or custom is the "moving force behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (internal quotation marks omitted). "Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward." *Id.* at 404, 117 S.Ct. 1382. "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* at 405, 117 S.Ct. 1382.

Defendant City of Memphis argues that it did not "maintain[ ] a policy or custom that was the moving force behind Plaintiffs' alleged constitutional deprivations...." (ECF No. 92–2 at 6.) Regarding Plaintiff Edmond's claim specifically, Defendant City of Memphis asserts that "[t]he alleged 'clearing' was not the moving force of his detention," because "Ed-

mond[ ] was detained after the Club 152 manager sought the assistance of the police." (*Id.* at 7 n. 2.)

Plaintiffs argue that "the Beale Street Sweep—by its very nature—deprives the individuals on Beale Street of their fundamental right to travel locally in public spaces" pursuant to the Due Process Clause of the Fourteenth Amendment. (ECF No. 97 at 19.) Plaintiffs further assert that the Beale Street Sweep directly resulted in violations of Plaintiffs Cole and Edmond's Fourth Amendment rights by the police. (*See id.* at 1920.) Plaintiffs rely on deposition testimony by Officer Skelton, which Plaintiffs assert describes the use of physical force to clear the street. (*Id.* (citing Ex. F. Excerpts of Dep. of Skelton at 34–44, ECF No. 97–6).) Because Plaintiffs have asserted claims based on due process and Fourth Amendment violations, the Court addresses the issue of causation for each.

**(1) Fourteenth Amendment due process violations**

With regards to Fourteenth Amendment violations, the Court agrees with Plaintiffs. As a threshold matter, Plaintiffs have stated a valid substantive due process claim for relief against the City of Memphis. Should all factual determinations regarding the constitutionality of the Beale Street Sweep be resolved in favor of Plaintiffs, at a minimum, the individuals cleared from the area at the time of the street suffered a direct violation of their due process right to travel and remain on public roadways as a result of the practice. *See infra* Part III.B. Accordingly, in light of the disputed facts in the record, the Court finds that a genuine issue of material fact remains as to the issue of causation regarding alleged Fourteenth Amendment violations.

### (2) Fourth Amendment violations

With respect to Plaintiffs' claims against the City of Memphis for Fourth Amendment violations, Defendant argues that "Plaintiffs' assert no basis upon which to attach municipal liability." (ECF No. 101 at 9.) According to Defendant City of Memphis, municipal liability does not exist based on Fourth Amendment violations because Plaintiffs do not assert that the Beale Street Sweep "constitutes a per se violation of the Fourth Amendment." (*Id.*)

 Defendant misapprehends the test for municipal liability to attach to a claim. Once a custom is established, the inquiry properly focuses on causation. *See Monell*, 436 U.S. at 691, 98 S.Ct. 2018; *Graham*, 358 F.3d at 383. The standard for causation, as set forth by the Supreme Court, is the existence of "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Defendant submits no authority that the policy or custom must be per se unconstitutional for liability to attach.

Plaintiffs' failure to challenge the Beale Street Sweep as per se unconstitutional under the Fourth Amendment is inapposite to the causation inquiry specifically and the responsibility inquiry generally. Ostensibly, Defendant's argument relies on the concept that an as-applied challenge necessarily requires a showing of "deliberate indifference." The test in the Sixth Circuit for applying a "deliberate indifference" standard, however, is whether a plaintiff challenges the municipality's inaction versus an affirmative policy or custom. *See infra* Part III.A.2.c. That Plaintiffs bring an as-applied challenge under the Fourth Amendment, rather than a facial challenge, does not affect the outcome.

In the present case, Plaintiffs have submitted sufficient evidence that the Fourth Amendment violations allegedly suffered by Plaintiffs directly resulted from the Beale Street Sweep. Both Plaintiffs state that they heard a command related to clearing of the street prior to being detained. (ECF No. 97–1 at PageID 1021; ECF No. 97–3 at PageID 1064–67.) Defendant has provided rebuttal evidence that Plaintiff Edmond was detained "after an argument with an employee of Club 152." (ECF No. 92–1 ¶ 1.) Based on the evidence provided by the parties, the Court finds that a genuine issue of material fact exists as to whether the Beale Street Sweep was the cause of Fourth Amendment violations allegedly suffered by Plaintiffs.

### c) Deliberate indifference

Defendant also argues that even if an unconstitutional custom or policy did exist at the time of Plaintiffs Cole and Edmonds' arrests, the City of Memphis is not responsible for any constitutional violation because Plaintiffs have not shown that the City acted with deliberate indifference in establishing the custom or policy. (ECF No. 92–2 at 7.) According to Defendant, "Plaintiffs offer no evidence of any pattern of behavior of unlawful acts with deliberate indifference to the rights of persons on Beale." (ECF No. 92–2 at 7.)

Plaintiffs argue that the "deliberate indifference" standard is satisfied in this case because Plaintiffs have asserted that "the Beale Street Sweep is a **facially** unconstitutional municipal policy [and custom] that caused, and was the moving force behind, the violations of the rights of the Plaintiffs and class members." (ECF No. 97 at 17, 20.) According to Plaintiffs, "a **facially** unconstitutional practice . . . is by its very nature deliberate indifference to the constitutional rights of those affected." (*Id.* at 20 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. La.2003)).)

The Court agrees with Plaintiffs that, assuming the Beale Street Sweep custom as alleged is factually established, the existence of the custom also establishes the City's responsibility for the custom. The relevant Supreme Court and Sixth Circuit precedent applies the "deliberate indifference" standard in cases where a plaintiff asserts a § 1983 claim against a municipality for failure to act to protect an individual's constitutional right. See, e.g., *Canton,* 489 U.S. at 388, 109 S.Ct. 1197 ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 124, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ("[The term deliberate indifference] was used in the *Canton* case for the quite different purpose of identifying the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents."); *Regets v. City of Plymouth,* 568 Fed.Appx. 380, 394 (6th Cir.2014) ("To succeed on a failure to train or supervise claim, the plaintiff must prove [that] ... 'the inadequacy was the result of the municipality's deliberate indifference' ....") (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir.2006)); *Key v. Shelby Cnty.,* 551 Fed.Appx. 262, 267 (6th Cir.2014) ("Under the 'inaction theory,' a plaintiff must show the existence of ... the county's tacit approval of the unlawful behavior amounting to deliberate indifference and an official policy of inaction....."); *Claiborne County,* 103 F.3d at 508 ("The evidence must show that the need to act is so obvious that the [municipality's] conscious decision not to act can be said to amount to a policy of deliberate indifference to [the plaintiff's] constitutional rights.") (internal quotation marks omitted).

Contrary to Defendant's position, the "deliberate indifference" standard is inapplicable to the present case. Plaintiffs do not assert a claim against the City of Memphis for its "inaction." Rather, Plaintiffs assert that an unconstitutional custom exists to affirmatively remove individuals from the Beale Street area in violation of their constitutional rights. (*See* Compl. at 2, ECF No. 1.) Because the alleged custom is an affirmative one, if Plaintiffs are able to factually establish the existence of the custom, Defendant City of Memphis' responsibility for the custom would be established. *See Alexander v. Beale St. Blues Co.,* 108 F.Supp.2d 934, 949 (W.D.Tenn. 1999) (declining to require allegations of deliberate indifference in complaint where plaintiff alleged affirmative policies caused violations of plaintiff's constitutional rights).

Plaintiffs cite to case law from other circuits to support the proposition that a facially unconstitutional custom or policy inherently satisfies the deliberate indifference standard. (ECF No. 97 at 20 (citing *Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir.La.2003); *Craig v. Floyd Cnty., Ga.,* 643 F.3d 1306, 1310 (11th Cir. 2011)).) Sixth Circuit precedent does not go so far as to establish a bright line rule that a facially unconstitutional custom is exempt from the "deliberate indifference" standard. The line drawn in Sixth Circuit case law is whether a plaintiff claims a constitutional violation based on a municipality's inaction. Accordingly, the Court declines to dismiss Plaintiffs' claims for failing to provide evidence of deliberate indifference.

**B. Substantive Due Process under the Fourteenth Amendment**

Plaintiffs argue that the Beale Street Sweep is an unconstitutional restriction on an individual's fundamental right to intra-

state travel. (ECF No. 97 at 8–11.) The Court first considers whether such a right is fundamental to the concept of ordered liberty contemplated by the Due Process Clause of the Fourteenth Amendment. Next, the Court considers whether the Beale Street Sweep comports with Plaintiffs' rights to due process under the Fourteenth Amendment. Third, the Court turns to whether Plaintiffs' Fourth Amendment claims preempt their claims brought pursuant to the Due Process Clause of the Fourteenth Amendment.

### 1. Fundamental right to travel

The Supreme Court has not directly addressed the issue of whether intrastate travel is a fundamental right within the context of substantive due process. *Johnson v. City of Cincinnati*, 310 F.3d 484, 496 (6th Cir.2002); *Wardwell v. Bd. of Ed. of City Sch. Dist. of City of Cincinnati*, 529 F.2d 625, 627 (6th Cir.1976). Sixth Circuit case law regarding the issue of intrastate travel rights differs depending on the circumstances in which the rights are asserted. In *Wardwell*, the Court of Appeals for the Sixth Circuit "f[ound] no support for [the] theory that the right to intrastate travel has been afforded federal constitutional protection." 529 F.2d at 627. Consequently, the Court of Appeals applied a rational basis test in upholding a school board's rule that "any employee hired by the [school district] ... must either reside within the [school district], or agree, as a condition of employment, to establish residency within the district within ninety days of employment." *Id.* at 626, 628.

The Court of Appeals addressed the issue again in *Johnson*, 310 F.3d 484. The *Johnson* court held that "the Constitution protects a right to travel locally through public spaces and roadways," as a fundamental right. *Id.* at 498. In support of the holding, the Court of Appeals found that similar to interstate travel, "the right

to travel locally through public spaces and roadways enjoys a unique and protected place in our national heritage." *Id.* at 597–98. The Court of Appeals distinguished the *Johnson* case from *Wardwell*. The Court of Appeals found that the holding in *Wardwell* was limited to "employee residency requirements" and that the suggestion that "the rational basis test should govern all potential intrastate travel claims ... would be dicta and would not bind this court." *Johnson*, 310 F.3d at 494. The Sixth Circuit Court of Appeals declined to follow Third Circuit case law which applied intermediate scrutiny to an anti-cruising ordinance. *Id.* at 502 (citing *Lutz v. City of York, Pa.,* 899 F.2d 255, 270 (3d Cir. 1990)). The Court of Appeals explained that strict scrutiny was the correct standard because "instead of regulating the manner in which affected individuals access [the area] ... the [o]rdinance [at issue] impose[d] a more severe restriction, broadly prohibiting individuals to access the entire neighborhood." *Id.*

Taken broadly, the *Johnson* and *Wardwell* holdings are in direct conflict. Therefore, in order to reach a congruous interpretation of the two holdings, the Court must construe the holdings narrowly. Accordingly, the Court finds that the holding in *Wardwell* is limited to the context of "employee residency requirements." Further, the holding in *Johnson* "is limited to the right to travel locally through public spaces and roadways." 310 F.3d at 494.

In the instant case, Plaintiffs' assert the argument that during the Beale Street Sweep the MPD "deprives the individuals on Beale Street of their fundamental right to travel locally in public spaces." (ECF No. 97 at 8–9, 19.) Although the Beale Street Sweep does not go so far as to prohibit access to the entire Beale Street area, it goes beyond merely restricting the manner in which people ac-

cess the area. As alleged, the Beale Street Sweep broadly denies individuals in the area access to the public roadways. (*See* Compl. at 2 ("[The] police officers of the Memphis Police Department . . . order all persons to immediately leave the sidewalks and street. . . .") This prohibition is more analogous to a general restriction of access to a public area than to an ordinance that prohibits "driving repeatedly through a loop of certain major public roads." *Johnson*, 310 F.3d at 502. Accordingly, the Court finds that a street sweep and clearing implicates the fundamental right defined in *Johnson*. Consequently, the Court applies strict scrutiny to the constitutionality of the Beale Street Sweep.

### 2. Strict scrutiny analysis

 "Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir.2007) (internal quotation marks omitted). Because the Court finds the right to intrastate travel is a fundamental right protected by the Constitution, the Court evaluates the Beale Street Sweep custom under a strict scrutiny standard. *See supra* Part III.B.1. To satisfy strict scrutiny, the burden of proof shifts to the government to show a narrowly tailored compelling government interest. *Johnson v. California*, 543 U.S. 499, 505, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005).

Defendant City of Memphis argues that the Beale Street Sweep survives strict scrutiny because "public safety, the wellbeing of persons and property on Beale, is a compelling state interest." (ECF No. 101 at 8.) Defendant asserts that "[t]emporarily clearing the two block stretch of Beale under circumstances which prudent policing dictates is narrowly tailored to

serve the interest of public safety." (*Id.*) According to Defendant, "[i]t would be irresponsible [for the] police to allow conditions on the street [to] overwhelm traditional police response." (*Id.*)

Plaintiffs argue that the Beale Street Sweep is not narrowly tailored and no compelling interest justifies its existence. (*See* ECF No. 97 at 11–12.) According to Plaintiffs, a temporary curfew in response to an emergency would be justified as a compelling state interest. (*Id.* at 12 (citing *Moorhead v. Farrelly*, 727 F.Supp. 193 (D.Vi.1989); *United States v. Chalk*, 441 F.2d 1277 (4th Cir.1971); *In re: Juan C.*, 28 Cal.App.4th 1093, 33 Cal.Rptr.2d 919 (Cal.App.1994); *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir.1996)).) Plaintiffs assert that rather than carrying out the Beale Street Sweep in response to an emergency, the Beale Street Sweep "facilitate[s] a 3:00 a.m. work shift end for police officers." (*Id.*) Plaintiffs further assert that Defendant "cites no authority—and the Plaintiffs are aware of none—for the proposition that routine law enforcement and the arbitrary work hours of police officers constitute a compelling interest sufficient to warrant the exclusion of persons engaged in lawful conduct from a public street." (*Id.*) Additionally, Plaintiffs contend that "[e]vidence of typical, reoccurring crime plainly is inadequate to constitute a compelling interest warranting a permanent policy of routinely clearing Beale Street of adults engaged in lawful conduct." (*Id.* (citing *Ruff v. Marshall*, 438 F.Supp. 303, 306 (M.D.Ga.1977)).)

 Regarding the existence of a compelling state interest, the Court agrees with Defendant that "public safety," "preserving the wellbeing of persons and property on Beale," and not "allow[ing] conditions on the street [to] overwhelm traditional police response" are compelling interests to the City of Memphis. (*See*

ECF No. 101 at 8.) In *Johnson*, the Court of Appeals for the Sixth Circuit found that the City of Cincinnati had a compelling interest "to enhance the quality of life in drug-plagued neighborhoods and to protect the health, safety, and welfare of citizens in those areas." 310 F.3d at 502. Defendant's interest in maintaining order in the Beale Street area is much the same.

The Court of Appeals, however, struck down the ordinance in *Johnson* on the grounds that it was not narrowly tailored to achieve the City's stated interest. *Id.* at 504. In determining whether the city ordinance was narrowly tailored, the Court of Appeals looked to whether the ordinance "implicate[d] an individual's interest in localized travel," and whether it was "the least restrictive means to accomplish the City's goal." *Id.* at 503. The *Johnson* court found that the ordinance "infringe[d] on the right to localized travel through the public spaces and roadways," and held that "[b]y excluding innocent individuals, the Ordinance ... unquestionably violated the constitutional rights of affected individuals, [and] failed to serve the purposes of the Act." *Id.* at 503–04. Moreover, the Court of Appeals affirmed the District Court's holding, which listed several alternatives to the ordinance, including "authoriz[ing] more funds and more police officers to patrol neighborhoods[, and] ... organiz[ing] neighborhood watches ..." *Johnson v. City of Cincinnati*, 119 F.Supp.2d 735, 744 (S.D.Ohio 2000) *aff'd*, 310 F.3d 484 (6th Cir.2002).

Like the city ordinance in *Johnson*, the Beale Street Sweep indiscriminately restricts an individual's travel through local spaces and roadways. Furthermore, the Beale Street Sweep imposes this restriction without regard to whether the individual barred from access to Beale Street is engaged in "wholly innocent conduct," or even whether the individual is likely to engage in illegal activity. *See Johnson*, 310 F.3d at 503. Some of the same alternative means available in *Johnson* were also available to the City of Memphis in the instant case. Consequently, less restrictive alternatives that do not directly infringe on an innocent person's right to localized travel exist in order to preserve the wellbeing and security of persons and property on Beale Street. Accordingly, the Court, finds that the Beale Street Sweep *as alleged* was not narrowly tailored and fails a strict scrutiny analysis.

The Court, however, stops short of declaring the Beale Street Sweep unconstitutional as a matter of law. Plaintiffs describe the Beale Street Sweep as "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department (hereinafter referred to as the "MPD") order all persons to immediately leave the sidewalks and street on Beale Street when there are no circumstances present which threaten the safety of the public or MPD police officers." (Compl. at 2, ECF No. 1.) Plaintiffs further characterize the sweep as routine law enforcement executed primarily for the purpose of facilitating the end of police officers' work shift. (ECF No. 97 at 12.) In contrast, Defendant City of Memphis characterizes the sweep as an occasional practice executed only when "circumstances impacting public safety dictated." (ECF No. 101 at 3.) Defendant also indicates the purpose of the Beale Street Sweep was "to control rowdy crowds." (*Id.* (internal quotation marks omitted).) Accordingly, several genuine issues of material fact remain.

### 3. Preemption

The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* The Supreme Court, however, has further explained:

[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Lewis,* 523 U.S. at 843–44, 118 S.Ct. 1708 (internal quotation marks omitted). Consequently, where a § 1983 claim does not fall within the textual scope of a Constitutional Amendment, it is then appropriate to evaluate the claim under the broader protections of due process. *Johnson,* 310 F.3d at 493.

In the instant case, the named Plaintiffs were arrested by police officers and detained for a period of time. (*See* Compl. ¶ 35–38, 51–58.) As a result, the named Plaintiffs' claims against the City of Memphis for constitutional violations that followed Plaintiffs' seizure fall within the scope of the Fourth Amendment. To the extent the named Plaintiffs seek individual relief for violations of due process under the Fourteenth Amendment, the named Plaintiffs' claims only apply to injuries suffered prior to each one's seizure. The

named Plaintiffs' due process claims are therefore only partially preempted.

## C. Fourth Amendment Violations

Plaintiffs assert claims of Fourth Amendment violations by the City of Memphis for unreasonable seizure due to excessive force. To succeed on a claim for a Fourth Amendment violation based on unreasonable seizure, Plaintiffs must show 1) seizure of the person occurred; and 2) the seizure was unreasonable. *See Brower v. Cnty. of Inyo,* 489 U.S. 593, 595, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

### 1. Seizure under the Fourth Amendment

"[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Although it is clear that both named Plaintiffs were ultimately seized, given that they were arrested during the encounter at issue, the timing of when the encounter ripened into a seizure is an issue of fact properly determined by the jury.

### 2. Reasonableness

"[T]he Fourth Amendment governs all intrusions by agents of the public upon personal security...." *Terry,* 392 U.S. at 19 n. 15, 88 S.Ct. 1868. The reasonableness analysis centers on "the scope of the particular intrusion, in light of all the exigencies of the case." *Id.* Generally, "[d]etermining whether the force used to effect a particular seizure is 'reasonable'

under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (internal quotation marks omitted).

Defendant City of Memphis argues that the interests of public safety justify use of force in carrying out the Beale Street Sweep. (*See* ECF No. 92–2 at 11.) According to Defendant:

> [D]ecisions made to protect public safety on Beale Street in directing persons to enter a club or leave the street and sidewalks at 2:30 or 3:00am on some Saturday or Sunday nights is a narrow and reasonable intrusion into the alleged constitutionally protected interests when balanced against the governmental interest in protecting the safety of persons and property on Beale.

(*Id.* at 11–12.) Plaintiffs assert two grounds on which unreasonable seizure may be found: 1) unconstitutional arrest; and 2) excessive physical force applied during arrest and detention. (*See* ECF No. 97 at 15.)

### a) Unconstitutional arrest

 Arrests made with probable cause do not violate the Fourth Amendment's prohibition of unreasonable seizure. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Furthermore, "[i]t is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir. 1999) (citing *Donovan v. Thames*, 105 F.3d 291, 298 n. 7 (6th Cir.1997)).

 In the instant case, Plaintiffs have raised a genuine issue of material fact as to whether Plaintiff Cole and Plaintiff Edmond were detained without probable cause. Plaintiffs assert that Cole was ar-

rested while "eating a slice of pizza on Beale Street" with his cousin. (ECF No. 97 at 15.) Likewise, Edmond states that he "was engaged in lawful conduct and no probable cause existed" when he was detained by Memphis police officers. (*Id.* at 16.) According to Plaintiffs, Edmond was merely "enjoying the entertainment on Beale Street" with his family. (*Id.*) Both Cole and Edmond assert that prior to being detained, they heard police make the announcement that persons in the area must either leave the streets or enter into an establishment. (ECF No. 97–1 at PageID 1021; ECF No. 97–3 at PageID 1064–67.) Defendant asserts that Edmond was detained only "after engaging in an argument with a bouncer at Club 152." (ECF No. 92–1 ¶ 17.) Accordingly, the Court finds that a genuine issue of material fact exists as to Fourth Amendment violations by the police on grounds of arrest without probable cause.

### b) Excessive physical force

 Use of excessive physical force in the arrest of an individual may also amount to unreasonable seizure in certain circumstances. *See generally Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865. Factors to be considered in determining whether the force applied in the seizure was unreasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. Additionally, "[t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the

facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. Consequently, neither evil intent nor good faith of the arresting officer bear on the reasonableness determination. *Id.* "[T]he question [is] whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

■ Plaintiffs assert that Cole was subjected to excessive force during his arrest on Beale Street. According to Cole, after being arrested for remaining Beale Street after the police announced to clear the streets, "MPD officers slammed Mr. Cole on the hood of a police squad car so hard that it dented the car's hood." (ECF No. 97 at 15–16.) Given that Cole was ostensibly participating in a lawful activity—eating a slice of pizza—the Court finds that a reasonable jury could find that the police officers' conduct in arresting Cole was unreasonable and violated his Fourth Amendment rights. Accordingly, the Court finds a genuine issue of material fact exists as to whether Cole's Fourth Amendment rights were violated by police on grounds of excessive physical force.

## IV. CONCLUSION

For the reasons stated above, Defendant City of Memphis' Motion for Summary Judgment (ECF No. 92) is GRANTED as to the following claims: 1) municipal liability for failure to train; 2) municipal liability for failure to investigate and discipline; 3) municipal liability pursuant to the Tennessee Government Tort Liability Act; and 4) punitive damages. With regards to First Amendment violations, the Court finds that Plaintiffs have not asserted a First Amendment claim in this case. De-

fendant's Motion for Summary Judgment is DENIED as to all other claims.

**IT IS SO ORDERED.**